## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Karl Dupuy,<br>Petitioner,[1] | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:22cv620 (LMB/WEF) |
| | ) | |
| Harold Clarke,<br>Respondent. | ) | |
| | ) | |

### MEMORANDUM OPINION

Karl Dupuy ("Petitioner" or "Dupuy"), a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his August 16, 2017 convictions in the Circuit Court of Stafford County, Virginia for aggravated malicious wounding, unlawful wounding, and of use of a firearm in the commission of a felony (aggravated malicious wounding). The respondent has filed a Rule 5 Answer and a Motion to Dismiss with supporting briefs and exhibits, [Dkt. Nos. 26 to 28], to which Dupuy has responded by filing a brief with attachments. [Dkt. No. 30]. Accordingly, this matter is ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss will be granted, and the petition will be dismissed with prejudice.

### I. Procedural History

In a two-day jury trial that ended on June 14, 2017, a jury convicted Dupuy of aggravated malicious wounding, in violation of Virginia Code § 18.2-51.2; unlawful wounding in violation of Virginia Code § 18.2-51.1; and use of a firearm in the commission of a felony in violation of

---

[1] The various pleadings and documents in the state court records refer to petitioner as "Dupuy." Accordingly, the caption of this civil action will be amended to reflect petitioner's correct last name.

Virginia Code § 18.2-53.1.[2] Commonwealth v. Dupuy, Case Nos. CR17000307-01, - 02, -03.
Dupuy retained counsel, G. Price Koch, who represented him throughout the trial and
sentencing. [Dkt. No. 28-4] at record page 74. On August 16, 2017, the court sentenced Dupuy to
23 years in prison, with 10 years suspended. Id. Dupuy did not file an appeal, and the time in
which he could have appealed expired on Friday, September 15, 2017.[3] Therefore, the time in
which Dupuy could file a federal habeas petition began to run on Monday, September 18, 2017,
and ended on Tuesday, September 18, 2018. See 28 U.S.C. § 2244(d)(i)(a) (the one-year statute
of limitations period "shall run from the latest of . . . the expiration of the time for seeking
[direct] review.")

On June 18, 2018, approximately ten months after judgment was entered, Dupuy,
proceeding pro se, filed a motion for a new trial in the circuit court in which he claimed that a
neurological report had not been presented at his trial; that the trial court should have given
instructions proffered by the defense; that the neurological report had not been subpoenaed and
his expert's opinion was not offered to counter the emergency room doctor's testimony; and that
the victims' testimony had "variations," with each victim "implicat[ing]" the other. [Dkt. No. 28-
6] at record page 157. The record does not indicate any ruling on the motion; however, the
circuit court most likely did not rule on the motion because it did not have jurisdiction to address
it.[4]

---

[2] The jury acquitted Dupuy of two counts of attempted murder in violation of Virginia Code
§ 18.2-32. The jury also acquitted Dupuy of a second count of aggravated malicious wounding
and convicted him of the lesser-included offense of unlawful wounding.

[3] In the state habeas proceeding, the Supreme Court of Virginia found that Dupuy "did not
appeal." [Dkt. No. 28-11].

[4] In Virginia, a circuit court loses jurisdiction to rule on post-trial motions if the motion has not
been filed within twenty one days after judgment was entered. See Va. Sup. Ct. R. 1:1; Singh v.
Mooney, 261 Va. 48, 54, 541 S.E.2d 549, 552 (2001) (holding that the circuit court lacked

On October 26, 2020, Dupuy filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, <u>Dupuy v. Clarke</u>, Record No. 201372, in which he challenged the validity of his convictions on the following grounds:

(1) Petitioner acted under duress; mens rea was not proven beyond a reasonable doubt.

(2) Petitioner was denied "instructions explaining duress and threats against family" and "expert assistance on [his] medical condition" which violated his 5th Amendment right to due process; and his "6th Amendment right have compulsory process for obtaining witnesses in his favor [and] to have the effective assistance of counsel for his defense."

(3) Petitioner was denied effective assistance of counsel because counsel failed to present evidence "of defendant's mental incompetence due to the traumatic brain injury" and counsel "failed to seek an expert opinion [and] consider psychological issues." The trial court failed to "adequately investigate psychiatric, medical, neurological, cultural, family and personal background."

(4) The cumulative effects of trial errors, and petitioner could not have discovered the factual predicate for the errors due to his incarceration:

- false and inaccurate statements by prosecutor;
- a hearing-impaired juror needed to change his battery during deliberation;
- jury did not fit criteria to be considered defendant's peers;
- perjury on part of young men [witnesses];
- counsel recorded proof of perjury but never used in court;
- petitioner did not have transcripts;
- expert opinion not requested by counsel;
- petitioner's coat was never swabbed to determine if his own blood was on it;
- suppression of evidence by the prosecution;
- intent was not proven beyond a reasonable doubt;
- improper vouching by prosecutor, improper comments by prosecutor about defense counsel;
- improper admission of evidence ruled inadmissible.

jurisdiction under Rule 1:1 over a motion to vacate filed after the twenty-one day period had elapsed, where the order being challenged was not void <u>ab initio</u>).

[Dkt. No. 28-2].[5]

On March 11, 2022, citing to Virginia Code § 8.01-654(A)(2), the Supreme Court of

Virginia dismissed Dupuy's state habeas petition as untimely. [Dkt. No. 28-11].[6] In dismissing

the petition as untimely, the court rejected Dupuy's assertion that the statute of limitations should

be tolled based upon his allegations that the prosecutor had suppressed evidence, specifically the

report of Dupuy's neurological exam and the failure to test the blood on his coat. The Supreme

Court of Virginia found that the prosecution had not suppressed either the neurological report or

the existence of the blood on petitioner's coat. [Dkt. No. 28-11]. On March 24, 2022, Dupuy

filed a motion to reconsider in the Supreme Court of Virginia.  The motion was denied on May

11, 2022. [Dkt. No. 28-12].

On November 1, 2018, 44 days past the one-year time period for filing a federal habeas

petition, Dupuy sent a letter to this Court in which he stated he wanted to file a "habeas corpus in

[sic] effort to receive a proper trial." See Dupuy v. Unknown, No. 1:18cv1361 ("Dupuy I") at

[Dkt. No. 1]. On November 13, 2018, the Court ordered that Dupuy's letter be construed as a

petition under 28 U.S.C. § 2254, directed the Clerk to file the letter conditionally as a habeas

corpus petition, warned Dupuy that the letter would not suffice as a proper petition, and directed

him to fill out the habeas form required by the Local Rule 83.4 and either pay the required $5.00

filing fee or file the application to proceed in forma pauperis. Dupuy I at [Dkt. No. 4]. Dupuy

---

[5] The Court has omitted duplicative alleged trial errors and repetitive allegations from this
summary of Dupuy's claims.

[6] A state "habeas corpus petition attacking a criminal conviction or sentence shall be filed within
two years from the date of final judgment in the trial court or within one year from either final
disposition of the direct appeal in state court or the time for filing such appeal has expired,
whichever is later." Va. Code Ann. § 8.01-654(A)(2). The state statute of limitations expired on
August 16, 2019, two years after the judgment was entered.

was given 30 days to comply and was warned that failure to comply would result in a dismissal of his petition without prejudice. Id.

Although Dupuy filed an application to proceed in forma pauperis on December 17, 2018, he failed to file a proper habeas corpus petition. Dupuy I at [Dkt. No. 6]. As a result, on January 18, 2019 the Court dismissed the petition without prejudice. Dupuy I at [Dkt. No. 7]. Dupuy's appeal of that decision was summarily dismissed by the Fourth Circuit on June 25, 2019, Dupuy I at [Dkt. No. 12], and his petition for a writ of certiorari was denied by the Supreme Court of the United States on November 4, 2019. Dupuy v. Unknown, 771 Fed. App'x 315 (4th Cir.), cert. denied, 140 S. Ct. 466 (2019). The pending habeas petition was filed on May 23, 2022, more than three and a half years past the September 18, 2018 deadline.[7] Unless the petition qualifies for statutory or equitable tolling it must be dismissed as time barred.

## II. Petitioner's Federal Claims

The petition filed on May 23, 2022, as amended on November 17, 2022, raises the following claims:[8]

1. Ineffective Assistance of Counsel. Petitioner's "attorney withheld exculpatory evidence. Petitioner went to trial while recovering from brain injury. Attorney did not present psychological evidence of petitioner suffering brain injury that he was awarded $18,000 for $10,000 of which went to attorney who even suppressed original copy of settlement check hiding his knowledge of brain injury that was sufficient in civil suit proving it['s] authenticity."

---

[7] This petition does not qualify as a second or successive petition because the first petition was dismissed without prejudice. In re Goddard, 170 F.3d 435, 438 (4th Cir. 1999) (habeas petitions "dismissed for reasons such as unripeness, failure to exhaust state remedies, or failure to pay filing fees are not counted in determining whether a later motion is 'second or successive'").

[8] In reviewing a federal habeas petition, a district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard...[and it is] the district court['s] duty to consider only the specific claims raised in a § 2254 petition." Folkes v. Nelsen, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted); Frey v. Schuetzle, 78 F.3d 359, 360-61 (8th Cir. 1996) (district courts adjudicate only those claims upon which the petitioner seeks relief and do not decide claims upon which the petitioner never intended to seek relief).

2. "Cumulative errors violated petitioner's 5th, 6th, and 14th Amendment rights. Errors such as false and inaccurate testimonies and statements by witnesses and prosecutor. Jury selection errors, not receiving a fair investigation and hearing, no expert opinion on neurological issues and suppression of evidence of brain injury."

3. "Denial of defendant's instructions. Duress, threats against family were excluded from defense. Expert opinion on brain injury not requested. Perjury by witnesses not explained to jury. Lastly, having an ineffective attorney that raised none of these objections and conditions to the court."

4. Violation of due process. On multiple occasions [petitioner moved] the circuit court for appeals, transcripts, and retrial. Despite the court's awareness of [petitioner's] need for transcripts and a court appointed lawyer as apparent in August 11, 2017 statement of fees; court kept sending correspondence to lawyer no longer commission[ed] to represent [petitioner] who claims [petitioner] didn't want an appeal even though he was ineffective."

[Dkt. Nos. 1, 20, 21]. Dupuy also listed what he describes as "the court's" violations of its

"Brady obligations" in an attachment to his petition.

I.      False and inaccurate statements by victims and prosecutor;

II.     Jury did not fit criteria of petitioner's peers;

III.    Hearing impaired juror having to change hearing aid battery;

IV.     Victim's delinquent history suppressed;

V.      Perjury and contradicting statements by victims;

VI.     Trial court ignoring petitioner's request for transcripts at appellate level;

VII.    Not being given a full and fair investigative hearing;

VIII    Expert opinion of medical, neurological and psychological issues not made available to defendant;

IX.     Suppression of evidence;

X.      Proof of intent beyond a reasonable doubt was absent;

XI.     Petitioner was awarded $18,000 for suffering from a brain injury in civil settlement;

XII     Cumulative errors.

[Dkt. No. 1-1] at 4.

### III. Statute of Limitations

Respondent argues that the petition must be dismissed as time barred. [Dkt. No. 28] at 8. Under the Anti-terrorism Effective Death Penalty Act (AEDPA), a petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. §§ 2244(d)(1)(A)-(D). This period generally begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" and excludes "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. §§ 2244(d)(1)(A), (d)(2).

Dupuy did not file a direct appeal, which means his judgment became final on Monday, September 18, 2017, after the time for noting an appeal with the Court of Appeals of Virginia expired.[9] See Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) ("[T]he one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired ....") (citing 28 U.S.C. § 2244(d)(1)(A)); Va. Sup. Ct. R. 5A:6(a) (requiring notice of appeal to be filed within thirty days after judgment of the circuit court). Thus, Dupuy had one year, or until September 18, 2018, to file a petition pursuant to 28 U.S.C. § 2254. As previously discussed, the earliest Dupuy attempted to obtain federal habeas

---

[9] In calculating when direct review ended, the 90-day period for filing an application for writ of certiorari with the United States Supreme Court is not included when a habeas petitioner does not properly maintain a direct appeal through the highest available state court. See Butler v. Cain, 533 F.3d 314, 316-19 (5th Cir. 2008); Riddle v. Kemna, 523 F.3d 850, 852-56 (8th Cir. 2008); Pugh v. Smith, 465 F.3d 1295, 1297-1300 (11th Cir. 2006).

review was on November 1, 2018, which was 44 days too late. The petition at issue in this civil action was filed on May 23, 2022, more than three and a half years past the deadline.

### A. Statutory Tolling

The federal statute of limitations is tolled only during the pendency of "properly filed" state habeas proceedings. Because Dupuy did not file his state habeas petition until October 26, 2020, by which time the federal statute of limitations had already lapsed, his federal petition is untimely. See Vroman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not, however, 'revive' the limitations period (i.e. restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."); see also Moore v. Crosby, 321 F.3d 1377, 1381 (11th Cir. 2003) ("While a 'properly filed' application for post-conviction relief tolls the statute of limitations, it does not reset or restart the statute of limitations once the limitations period has expired."); cf. Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001) ("even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period.").

Moreover, the Supreme Court of Virginia found that when Dupuy finally filed his state habeas petition, it was untimely. Therefore it was never "properly filed" for purposes of tolling the federal statute of limitations. See Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) ("[T]ime limits, no matter their form, are 'filing' conditions. Because the state court rejected petitioner's [] petition as untimely, it was not 'properly filed' and he is not entitled to statutory tolling under § 2244(d)(2)"). Accordingly, the petition is untimely under § 2244(d) unless petitioner can establish that the statute of limitations does not apply or should be equitably tolled. See Christian v. Baskerville, 232 F. Supp. 2d 605, 608 (E.D. Va. 2001), appeal dismissed, 47 Fed. App'x 200 (4th Cir. 2001).  This he cannot do.

8

*B. Equitable Tolling*

To qualify for equitable tolling, a petitioner must demonstrate that (1) he had been pursuing his rights diligently and (2) some extraordinary circumstance stood in his way and prevented timely filing. Pace, 544 U.S. at 418. A petitioner asserting equitable tolling "bears a strong burden to show specific facts" that demonstrate fulfillment of both elements of the test. Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (quoting Brown v. Barrow, 512 F.3d 12304, 1307 (11th Cir. 2008)). The petitioner generally is required to specify the steps he took in diligently pursuing his federal claim. Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001). In addition, the petitioner must "demonstrate a causal relationship between the extraordinary circumstance on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000).

Petitioner blames his attorney as being responsible for the untimely filing, claiming that counsel abandoned him after he was sentenced. [Dkt. No. 1] at 13-14. Attorney abandonment, in limited circumstances, can be sufficiently egregious to constitute extraordinary circumstances that warrant equitable tolling. Maples v. Thomas, 565 U.S. 266, 281-82 (2012); Holland v. Florida, 560 U.S. 631, 652 (2010). However, even in the presence of such egregious behavior, a habeas petitioner must demonstrate that he acted with the requisite diligence necessary to warrant equitable tolling. See Spencer, 239 F.3d at 630. Under these facts, Dupuy's counsel's conduct does not constitute abandonment. Further, there is no causal relationship between counsel's conduct and Dupuy's late filing. If Dupuy had been diligent, he could have raised his claims in a timely filed state habeas petition.

9

Dupuy also claims he could not file a challenge to his convictions until he had obtained copies of the trial transcripts, and he did not receive the transcripts until 2021.[10] His argument ignores that his state habeas petition contains many of the same claims he raised in his motion for a new trial in June 2018, and that he actually filed his state habeas petition before he received the transcripts. Importantly "there is no requirement that a habeas petitioner enumerate in his petition every fact which supports a ground for relief. Rather, Rule 2(c) of the Rules Governing § 2254 Cases provides that a petitioner need only 'set forth in summary form the facts supporting each of the grounds' specified in the petition." Lloyd v. Van Natta, 296 F.3d 630, 633 (7th Cir. 2002). Petitioner fails to demonstrate that his lack of access to specific documents prevented him from setting forth in summary form the facts that support his claims. See Weibley v. Kaiser, 50 Fed. App'x 399, 403 (10th Cir. 2002) (holding petitioner's argument "insufficient because he does not allege specific facts that demonstrate how his alleged denial of [legal] materials impeded his ability to file a federal habeas petition"); United States v. Butler, 178 Fed. App'x 327, 327 (4th Cir. 2006) (observing that criminal defendants generally can rely upon their own recollection in preparing a collateral attack); McCleskey v. Zant, 499 U.S. 467, 500 (1991) (unavailability of a document, the contents of which petitioner had at least constructive knowledge, did not prevent him from raising claim in his habeas petition).

Here, Dupuy did not act with diligence in pursuing collateral relief in either the state or federal courts. For example, he waited until nine months after judgment was entered to send a letter, dated May 30, 2018, to the circuit court clerk asking if he had "an appeal noted on his

---

[10] The circuit court sent Dupuy a letter dated December 15, 2017—apparently in response to his request for a copy of his transcripts—stating that the court had not received any transcripts and there was no charge for transcripts in the costs assessed against him. The letter also provided him with the court reporter's contact information. [Dkt. No. 30-1 at 11].

convictions" and if he could have an attorney "appointed for an appeal or possible reconsideration." [Dkt. No. 1-2] at 6. In a reply dated June 5, 2018, Dupuy was informed that no "appeal was ever noted on [his] case" and that if he wanted an attorney appointed to represent him that he had to "submit a motion requesting counsel as well as the attached financial statement that has been taken under oath." Id. at 7.[11] Consequently, in June 2018, well within the statute of limitations for a state habeas petition (and before the expiration of the federal statute of limitations in September 2018), Dupuy knew that no appeal had been filed and was advised as to what he needed to do in order for the circuit court to entertain a request for appointment of counsel.

Despite knowing that no appeal had been noted, Dupuy did not seek any judicial remedy and instead, on October 29, 2018, he filed a complaint with the Virginia State Bar against Koch, his retained trial counsel, in which he argued that Koch had not given him his "case file or noted his appeal." Id. at 19. Koch replied to the complaint by letter dated November 15, 2018, which was addressed to Dupuy with a copy sent to the Virginia State Bar Counsel, stating that he and Dupuy had discussed whether or not to appeal, that Koch had advised against filing an appeal because of a "lack of issues," and that Dupuy had agreed with Koch and "did not want to appeal [his] case." Id. at 20. Koch's letter further explained that after the time to appeal had passed, Dupuy contacted him and expressed his desire to appeal. Koch explained to Dupuy that it was no longer "possible [to appeal] … due to the expiration of deadlines." Id. Although the time had passed to file an appeal, Dupuy could have filed a timely state habeas petition at that time. Instead, Dupuy waited until October 2020, almost two years after Koch responded to his letter

---

[11] Dupuy submitted a motion on June 18, 2018, along with a "financial statement," however, he failed to execute the financial statement under oath as directed. [Dkt. No 28-7] at record pages 202 to 203.

11

and after the state statute of limitations for a habeas review had expired. These facts do not support equitable tolling of the statute of limitations.  See Wakefield v. RRB, 131 F.3d 967, 970 (11th Cir. 1997) (neither a litigant's pro se status nor ignorance of the law normally warrants equitable tolling).

   *C. Actual Innocence*

   A claim of actual innocence may excuse the untimely filing of a petition. See McQuiggin v. Perkins, 569 U.S. 383, 399 (2013) ("To invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'") (quoting Schlup v. Delo, 513 U.S. 298, 327(1995)). For a petitioner to claim actual innocence, "[new] evidence must establish sufficient doubt about [a petitioner's] guilt to justify the conclusion that his [incarceration] would be a miscarriage of justice unless his conviction was the product of a fair trial." Schlup, 513 U.S. at 316.

   "[H]abeas corpus petitions that advance a substantial claim of actual innocence are extremely rare." Id. at 322. To state such a claim, the petitioner must satisfy a "rigorous" burden by "support[ing] his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." Id. at 324 (emphasis added). Further, "[h]aving been convicted ... [petitioner] no longer has the benefit of the presumption of innocence. To the contrary, [petitioner] comes before the habeas court with a strong—and in the vast majority of the cases conclusive—presumption of guilt." Id. at 326 n.42.

   The district court must examine all evidence and make a holistic threshold determination about the petitioner's claim of innocence separate from its inquiry into the fairness of his trial.

12

See Teleguz v. Pearson, 689 F.3d 322, 330 (4th Cir. 2012). The district court may consider: the

nature of evidence, House v. Bell, 547 U.S. 518, 537 (2006), the timing of submissions,

McQuiggin, 569 U.S. at 399, the credibility of witnesses, House, 547 U.S. at 537, 552, and the

probative force of the newly supplemented record. Id. at 538; Sharpe v. Bell, 593 F.3d 372, 381

(4th Cir. 2010).

　　　Here, Dupuy does not rely on any new evidence that was not available at trial to establish

his actual innocence. Instead, he reargues the evidence that was presented during his trial by

pointing to inconsistencies with the trial testimony of various witnesses—evidence that he

concedes he and his counsel knew about but did not present. [Dkt. No. 1-1] at 2, 8, 9-12.

Although he describes medical evidence, Dupuy has failed to proffer any medical expert

testimony that might establish that his medical condition made it more likely than not that "no

reasonable fact finder would have convicted him" if presented with that evidence. Id.[12] Instead,

his medical records from six weeks before the crime show that he was "alert and oriented,

provides detailed and accurate history, recent and remote memory intact, [Dupuy] is attentive,

---

[12] See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (dismissing claims of ineffective assistance of counsel where petitioner failed to make a specific proffer of the testimony of the omitted witness); see also Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994) ("[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply Strickland's standards' because 'it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiency in counsel's performance.'") (quoting United States ex rel. Partee v. Lane, 926 F.2d 694, 701 (7th Cir. 1991)).

normal concentration, fund of knowledge appears normal." [Dkt. No. 1-2] at 16. Dupuy told the

doctor that he was not having any "difficulty at work." Id. at 17.[13]

Moreover, Dupuy's trial strategy and the basis for his actual innocence argument was a

self-defense claim.[14] In support of that defense, Dupuy testified at his trial describing the events

on the night he shot the two fifteen-year-old boys at his house. Dupuy admitted that after buying

tobacco products for the victims, they all went back to his house where they smoked marijuana

together in his living room. (6/14/17 Tr. at 61-73).[15] Dupuy became nervous when one of the

victims retrieved a hammer and a pipe from a backpack and when one of the victims made

statements he construed as threatening, which caused him to retrieve his pistol that was visible to

both victims when he returned to the living room. (Id. at 76-80).

Dupuy testified that the victims began talking about criminal activity that they were

involved in and that made him "nervous." (Id. at 82). As a result, he went to the front door and

made it known that he was "pretty much letting them know it's time to leave," to which they

responded by saying it was "their house now." (Id. at 84, 85). The two victims got up,

whispering to each other as Dupuy walked over to them. Although they pushed into him, he was

able to get them outside of the house, where he scuffled with them. In the course of the

altercation, Dupuy lost possession of his pistol, and then retrieved it at the bottom of the steps.

(Id. at 86-91). He admitted he had not seen a weapon in either victim's hands as they exited the

house. (Id. at 134). Dupuy testified about having been in two car accidents and that seeing the

hammer in the victim's hands made him concerned that he might get hit in the head. (Id. at 92).

---

[13] At trial, Dupuy testified that he was not using any of the medications he had been prescribed on the night of the offenses and had "kinda stopped using them because they aggravated ... [his] trauma." (6/14/17 Tr. at 151).

[14] The jury was instructed on self-defense. [Dkt. No. 28-6] at record page 135.

[15] The June 14, 2017 Trial Transcript is attached to respondent's Brief as Dkt. No. 28-9.

14

Dupuy admitted he shot one victim twice and the other victim three times as they were coming toward him, but he denied that he aimed his pistol at the victims. (Id. at 93-94, 117-19). He also testified that he "assumed" he had pistol whipped one victim and that he hid the firearm in the basement under the HVAC unit after the incident. (Id. at 119-20). Dupuy's credibility was significantly impeached by his admission that he lied to the detective who interviewed him "about a few things'" (id. at 120), and by the statement that he had not loaded a round into the chamber, meaning it was not "immediately" ready to fire. (Id. at 131). The quantum of evidence produced during the trial was more than sufficient to sustain Dupuy's convictions and nothing he has described in his petition amounts to new evidence that, had it been presented at trial, would have led a reasonable jury to acquit him. For all these reasons, Dupuy cannot rely on a claim of actual innocence to save this extremely untimely federal petition.

## IV. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 26] will be granted by an Order issued with this Memorandum Opinion.

Entered this 13 day of September 2023.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge